DETERMINED IN THE

# FOURTH DEPARTMENT

AT

# GENERAL TERM,

### June, 1878.

---

## REUBEN P. CAULKINS AND ISAAC CAULKINS, RESPONDENTS, v. ANGELO HELLMAN, APPELLANT.

*Parol contract of sale — invalid under statute of frauds — same person cannot act as agent for both parties in delivery and acceptance respectively of the goods — Bill of sale — cannot be varied by parol evidence.*

Where a contract for the sale of goods rests wholly in parol, and no part of the purchase-money has been paid, a delivery of the goods to, and an acceptance thereof by the vendee being relied upon to take the sale out of the statute of frauds, the same person cannot act as the agent of both parties; that is, he cannot claim to act as the agent of the seller to negotiate the sale, and the agent of the buyer to receive and accept the goods.

A written bill of sale "of twenty-three casks of wine" imports a sale of the casks as well as of the wine, unless the contrary expressly appears, and parol evidence is inadmissible to show that it was agreed at the time of the sale that the vendee should return the casks.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*S. K. Williams*, for the appellant.

*E. B. Pottle*, for the respondents.

TALCOTT, P. J.:

This is an appeal from a judgment, rendered at the Ontario Circuit, on the verdict of a jury; and from an order denying a new trial in the action.

The action is brought to recover the price of a quantity of wine sold by the plaintiffs, through their agent, Gordon, to the defendant, at the city of New York, by a parol contract, void by the Statute of Frauds, unless the defendant accepted the wine. The wine was, by the contract, to be delivered at Blood's Station, a station on the railroad some six miles from the town of Naples, in Ontario county, where the wine was manufactured, and where the plaintiff resided; and Gordon, who had sold the wine as the agent of the plaintiffs to the defendant, was engaged by the defendant to see to the shipping of the wine to the defendant, at New York, from Blood's Station.

The wine was sold by sample, which sample was retained by the defendant at his place of business in New York. The case has been once before the Court of Appeals, and is reported in 47 N. Y., at page 449, on which occasion the Court of Appeals reversed the judgment which had been obtained by the plaintiff, and ordered a new trial. The case now comes up on the defendant's appeal, after a judgment for the plaintiff, obtained on the verdict of the second trial, and presents sundry exceptions taken to the rulings on the trial.

On the first trial it seems to have been held that a delivery of the wine at Blood's Station, in conformity with the terms of the verbal contract of sale, was sufficient to take the case out of the Statute of Frauds, the Court of Appeals holding that "if the contract is oral, and no part of the price is paid by the vendee, there must not only be a delivery of the goods by the vendor, but a receipt and *acceptance* of them by the vendee, to pass the title or to make the vendee liable for the price, and this acceptance must be voluntary and unconditional. Even the receipt of the goods, without an acceptance, is not sufficient; some act or conduct on the part of the vendee or his authorized agent, manifesting an intention to accept the goods as a performance of the contract, and to appropriate them, is required to supply the place of a written contract."

On the first trial, Gordon was sworn as a witness, and testified fully to the contract, and to his being requested by the defendant to see to the shipping of the wine at Blood's Station, and his testimony on the subject was before the Court of Appeals. The defendant claims that when the wine arrived at New York, it did not conform to the samples, but had been frozen, and was worthless; that he refused to accept it, and took measures to notify the plaintiff of the condition of the wine, and his refusal to accept it; and that the wine was placed in his cellar, subject to the order of the plaintiff, and while so situated it was destroyed by a fire, which occurred without his fault or neglect, whereby his store was burned.

The opinion delivered in the Court of Appeals states that the plaintiff's counsel, in his statement of facts, suggests that Gordon was the agent of the defendant to accept the goods at Blood's Station, but that "this statement is not borne out by the evidence."

On the second trial, Gordon was again sworn as a witness, and his testimony substantially corresponds with the testimony given by him on the first trial, except that he has added a statement not made by him on the former trial, as follows : "He (Hellman) said, 'I want you to be very particular and see that this wine corresponds with the sample.' I told him I would do so." And it is claimed that this new evidence shows Gordon to have been the agent of the defendant to accept for the defendant the wine at Blood's Station.

The plaintiffs, in their complaint, do not claim that the defendant accepted the wine at Blood's Station, although they do state therein that the defendant "requested said Gordon to make as favorable an arrangement as possible for the interest of the said defendant, with the said railroad company at Blood's Station, for the transportation of said wine."

It seems that Gordon was employed as the agent of the plaintiffs to sell the wine, and, as he claims, it was a casual employment, for which he was to be paid by the plaintiffs at the rate of two dollars a day and his expenses. The learned justice at the Circuit, while recognizing the rule of law that a person cannot be the agent at the same time of both parties to a contract, yet

instructed the jury that the sale of the property and the reception of it at Blood's station were not necessarily the same transaction, and that " if Gordon was employed by the plaintiffs only to make the sale, to make a bargain for the sale, and his employment as the agent of the plaintiffs ceased when the bargain was made, then it was competent for him to act as the agent of the defendant in any subsequent transaction that took place between the plaintiffs and the defendant," thus giving the jury to understand that the sale and acceptance of the wine were distinct transactions, as to which Gordon could act as the agent of the plaintiffs in making the sale, and for the defendant in accepting the goods, upon the theory, also expressly stated to the jury, that " as soon as Gordon got back from New York after making the sale of this wine, and had reported it to the plaintiff, his employment ceased." We think this is drawing too fine a distinction. The agreement for the sale, and the acceptance by the vendee of the thing sold, are too intimately connected as parts of the same transaction, in this case, to authorize one person to act as the agent of both parties. The acceptance was necessary to a valid contract of sale. Before the wine had not only been received, but had been unconditionally accepted by the vendee with a view to appropriate the same, the contract of sale was utterly void, and was of no effect as the Court of Appeals held in this case. The acceptance was quite as material to the contract of sale as any other part of such contract, and the agent Gordon was under a strong inducement to make out an acceptance on the part of the vendee, so that the void contract he had made in behalf of the plaintiffs should have infused into it vitality and validity, and we do not see why the objections to the same person acting as agent of both parties, in this case, do not apply with full force, however it might be in the case of a contract originally valid and binding. The rule is well-settled, that the law does not tolerate any man becoming both buyer and seller, at the same time of the same article, nor is it necessary to show that he who assumes to have acted as the agent of both parties has acted in any manner unfairly. (Story on Agency, §§ 31, 211; *Claflin* v. *Farm.*, etc., *Bank*, 24 How. P. R., 1, 15; *N. Y. Cent. Ins. Co.* v. *Nat. Protection Ins. Co.*, 14 N. Y., 85, and cases there cited.)

For this reason we are of opinion that Gordon could not be the agent of the defendant to accept the wine at Blood's station, and that whatever he did there did not amount to an unconditional acceptance on the part of the defendant. Besides which, the language stated by Gordon in his last testimony, said to have been used by Hellman, did not necessarily import that he intended to constitute Gordon as his agent to inspect and accept the wine in his behalf at Blood's station, and is entirely consistent with the idea that he was addressing him as the plaintiffs' agent, and enjoining caution in regard to the quality of the wine to be shipped. The idea that the agent of the sellers should be employed as the agent of the buyer in determining whether the wine shipped corresponded in quality with the wine which said agent had just sold to Hellman is, in itself, so improbable that no intendment that such was the meaning of the language used by the buyer can be indulged. We think, therefore, that the justice at the Circuit erred in advancing the theory upon which the plaintiff was allowed to recover the price of the wine claimed to have been sold to the defendant in March, 1866.

The plaintiffs, for a second cause of action, set forth in their complaint that in September, 1865, the plaintiffs sold to the defendant twenty-three casks of wine, by which contract of sale the defendant was to return to the plaintiffs the casks containing the said wine, but that the defendant had neglected and refused to return the said casks. It appeared from the evidence that the sale of the twenty-three casks of wine was made by John J. Webber in his own name, but in fact as the agent of the plaintiffs. In this case it appears there was a regular bill of sale made out. By some apparent oversight, the bill of sale is omitted from the case, although stated to be contained therein; but, from what passed on the trial, we infer there was nothing in the bill of sale from which any obligation to return the casks could be inferred. If this was so, and the bill of sale purported to be a bill of sale of twenty-three casks of wine, we think parol evidence was inadmissible to add to or change the contract, by showing that at the time of the sale it was agreed that the defendant should return the casks. A sale of so many casks of wine imports a sale of the casks as well as the wine, unless the contrary expressly appears; and we think

the court erred in the admission of parol evidence to show that it was agreed at the time of the sale that the defendant should return the casks. For the foregoing reasons, we think there should be a new trial in the case.

Present—TALCOTT, P. J.· SMITH and HARDIN, JJ.

Judgment and order denying a new trial reversed, and new trial ordered. Costs to abide the event.